# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19- 116 M
)
Black IPhone Model X Using Contact Number )
302-682-4905 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Black IPhone Model X Using Contact Number 302-682-4905, as more particularly described in Attachment A

located in the _____ District of ____Delaware____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

FILED
APR 12 2019
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and | Possession with Intent to Deliver a Controlled Substance |
| 21 U.S.C. 922(g) | Possession of a Firearm by a Person Prohibited |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Sally Koeplin*
Applicant's signature

Sally Koeplin, Special Agent ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 04/12/2019

*Christopher J. Burke*
Judge's signature

City and state: Wilmington, Delaware

Hon. Christopher J. Burke, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK IPHONE MODEL X USING CONTACT NUMBER 302-682-4905 CURRENTLY LOCATED AT THE ATF WILMINGTON FIELD OFFICE | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

Your affiant, Sally Koeplin, being duly sworn, deposes and states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since January of 2016. During that time, my duties have included the investigation of federal and state firearms offences. I am currently assigned to the Wilmington, Delaware Field Office within the Baltimore Field Division. During your affiant's law enforcement career, your affiant has received law enforcement training on the investigation of firearms and other offences on numerous occasions including courses at the National ATF Academy, the Federal Law Enforcement Training Center Criminal Investigator Program and Police Program, and the U.S. Secret Service James J. Rowley Training Center. Prior to your affiant's employment with ATF, your affiant was trained and employed as a Police Officer with the United States Secret Service Uniformed Division for over five (5) years. During the course

1

of your Affiant's law enforcement career, your Affiant has received law enforcement training on the investigation of firearms offenses. During the course of your affiant's law enforcement career, your affiant has participated in over 50 investigations of firearms offenses and participated in the seizure of over 100 firearms. Your affiant has also had numerous conversations with police officers and Federal agents about the facts and circumstances of firearms offenses and investigations. Your affiant has also obtained or assisted in the execution of numerous search warrants involving firearms and federal firearm offenses.

3.  In my capacity as a SA with the ATF, I am currently assigned as the primary case agent in the investigation of MICHAEL HENRY, date of birth: 05/09/1979 ("HENRY" or "TARGET"), who was arrested on February 12, 2019, following an administrative search conducted by probation officers with the State of Delaware. This application seeks authority to search a cellular phone seized in connection with HENRY'S February 12, 2019 arrest.

4.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5.  The device to be searched (the "TARGET DEVICE") is a black iPhone smart phone, model X, utilizing contact number 302-6824905, hereinafter referred to as "TARGET DEVICE."[1] currently located at the ATF Wilmington Resident Office in Wilmington, Delaware.

6.  The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

---

[1] Additional identifying information, including a specific model number and serial number, could not be determined at this time because the phone was "locked" and thereby inaccessible without the password and/or passcode.

## PROBABLE CAUSE

7. On February 12, 2019, members of the Georgetown, Delaware Probation and Parole Office executed an administrative search warrant at 36116 Palace Lane, Rehoboth, Delaware, 19971 located within Camelot Meadows Mobile Home Park. HENRY was under supervision by the Georgetown, Delaware Probation and Parole Office as a convicted sex offender, based on a February 13, 2017, conviction of Fourth Degree Rape in the Sussex County Superior Court.

8. The February 12, 2019, administrative search was conducted based on information provided by a concerned citizen to HENRY'S probation officer indicating that HENRY was violating certain conditions of his release, including that HENRY was living at the Palace Lane residence despite not having informed his probation officer of a change in his address. Several probation officers began conducting surveillance of the Palace Lane residence, which corroborated certain details provided by the concerned citizen. The probations officers likewise learned information from the management office of Camelot Meadows Mobile Home Park that corroborated the concerned citizen's information.

9. The probation officers knocked on the door of the residence with no answer for a short period of time. Eventually, a woman later identified as TARGET'S girlfriend answered the door and informed the probation officers that TARGET was not in the residence.

10. Upon executing the search warrant at the residence, however, the probation officers found TARGET hiding under a bed in a bedroom. Hidden underneath the same mattress where the officers found TARGET, they recovered a black Smith & Wesson M&P 9 millimeter handgun loaded with three (3) rounds of ammunition.

11. On 10 April, 2019, Your Affiant reviewed HENRY'S criminal history through various law enforcement databases. Based on this investigation, Your Affiant learned that HENRY has been convicted of the following offenses, each of which is punishable by a term of imprisonment exceeding twelve (12) months: Rape, Fourth Degree, in Sussex County Superior Court, District of Delaware, on February 13, 2017; Felon in Possession of a Firearm, in U.S. District Court, District of Delaware, on May 15, 2008; Selling Cocaine, in U.S. District Court, District of Delaware, on April 4, 2008; Felon in Possession of a Weapon, in U.S. District Court, District of Delaware, on June 30, 2006; and Burglary, Third Degree, in Sussex County Superior Court, District of Delaware, on March 18, 1999. Because of these convictions, HENRY is prohibited under federal law from possessing a firearm.

12. The probation officers also obtained a warrant for and searched TARGET's vehicle, a Chevrolet Suburban bearing Delaware registration, 116132 ("TARGET VEHICLE"). During the search of the Palace Lane residence and the TARGET VEHICLE, officers recovered several hundred grams of suspected marijuana, more than 200 grams of suspected cocaine and crack cocaine, other suspected narcotic substances in various types of packaging, over eight thousand dollars ($8,000) U.S. Currency, and indicia of residency in the name of the TARGET.

13. The probation officers also discovered the TARGET DEVICE in the same bedroom in which TARGET was located and in which numerous other items including the above firearm were located. The TARGET DEVICE was located in the bedroom by probation officers at the direction of HENRY. During his subsequent interview with police, HENRY was presented with the TARGET DEVICE, which was locked by a passcode. Police than requested the passcode with which to open the TARGET DEVICE, but HENRY stated he did not want to provide it.

14. After the search was completed, Delaware State Police Officers escorted TARGET to Delaware State Police Troop 2, where TARGET was read *Miranda* warnings and waived same at that time. During the recorded interview, TARGET stated that the narcotics and firearm located at the Palace Lane residence belonged to him and that he had been selling the drugs for a period of time, having just replenished his supply earlier that day.

15. Based on my training and experience, it is common for drug dealers to use cellular phones to facilitate drug trafficking activities, including communicating with sources of supply and purchasers and mentioning firearms possession or use. It is likely that the TARGET DEVICE was used for drug trafficking and/or will include evidence of firearms possession by HENRY. Furthermore, your affiant can attest that persons involved in the trafficking of drugs capture photographs of their drugs with their cellular telephones to send to prospective purchasers and/or to tout the amount of drugs they have access too.

16. Based upon your affiant's training and experience, cellular telephones, such as the TARGET DEVICE, often contain voice and text message capabilities, memory storage of numbers, text, and other information including address books and other contact information, voice mails and photographs in addition to providing cellular telephone service. I believe that a search of the electronic files and memory of these cellular telephones will yield evidence of violations of federal laws, specifically, Title 21, United States Code, Sections 846 and 841 (a)(1), and Title 18, United States Code, Section 922(g), including but not limited to evidence disclosing the identities of persons and locations involved in the commission of these offenses. Furthermore, to the extent that the TARGET DEVICE contains financial information, that information may constitute or lead to evidence of drug distribution and/or firearms possession. Your Affiant further believes that the

TARGET DEVICE will likely contain additional evidence establishing that the TARGET DEVICE was utilized by HENRY.

17. The TARGET DEVICE is currently in the lawful possession of the ATF. It came into the ATF's possession during the execution administrative search conducted by HENRY'S probation officers on February 12, 2019.

18. The TARGET DEVICE is currently in storage at the ATF Wilmington Field Office. In my training and experience, I know that the TARGET DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICE first came into the possession of the ATF.

19. While the ATF may already have all necessary authority to examine the TARGET DEVICE, I seek this warrant out of an abundance of caution to be certain that an examination of the TARGET DEVICE will comply with the Fourth Amendment and other applicable laws.

20. Based on the above information, Your Affiant submits that probable cause exists that the requested search will yield evidence of Possession of a Firearm by a Person Prohibited, in violation of Title 18, United States Code, Section 922(g)(1), and Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(c), specifically cocaine.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

> a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless DEVICE used for voice and data

communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the DEVICE.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain

any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage DEVICE designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation DEVICE uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation DEVICEs can give a user driving or walking directions to another location. These DEVICEs can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those

signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic DEVICE used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication DEVICEs and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the DEVICE.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication DEVICEs and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or

    otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic DEVICE used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic DEVICES that communicate with each other. Due to the structure of the Internet, connections between DEVICES on the Internet

often cross state and international borders, even when the DEVICEs communicating with each other are in the same state.

22. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone/features/, I know that the TARGET DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation, and PDA. In my training and experience, examining data stored on TARGET DEVICE of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the TARGET DEVICE.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word

processing file).

b. Forensic evidence on a devide can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET DEVICE consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the TARGET DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a TARGET DEVICE already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based upon the aforementioned information, Your Affiant submits that probable cause exists to believe that the TARGET DEVICE contains information regarding violations of federal criminal laws involving drug trafficking or illegal firearms possession committed by MICHAEL HENRY in the District of Delaware.

*Sally Koeplin*
Sally Koeplin
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed
to before me this
12th day of April, 2019.

Honorable Christopher J. Burke
United States Magistrate Judge

# ATTACHMENT A

The property to be searched is a cellular telephone ("TARGET DEVICE"):

a. A black iPhone smart phone, model X, utilizing contact number 302-682-4905, currently located at the ATF Wilmington Resident Office in Wilmington, Delaware.

This warrant authorizes the forensic examination of the TARGET DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the TARGET DEVICE described in Attachment A that relate to violations of federal law, specifically Possession of a Firearm by a Person Prohibited, in violation of Title 18, United States Code, Section 922(g)(1), and Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(c), including:

   a. lists of customers and related identifying information relating to violations of federal narcotics laws;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

   d. any electronic calendars, notes, task lists or other information relating to any person's whereabouts or activities relevant to violations of federal narcotics or gun possession laws;

   e. Images, pictures, photographs, videos, or other visual depictions sent or received by the TARGET DEVICE relating to violations of federal narcotics or gun possession laws; and

   f. The content of any and all text messages sent or received by the TARGET DEVICE relating to violations of federal narcotics laws or gun possession laws.

2. Evidence of user attribution showing who used or owned the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.